## RODOLFI v. EL PASO NAT. BANK et al.
### No. 8632.

Circuit Court of Appeals, Fifth Circuit.
June 29, 1938.

Sydney Smith, of El Paso, Tex., for appellant.

Thornton Hardie and Wm. H. Burges, both of El Paso, Tex., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Ethel White Rodolfi, brought this suit against El Paso National Bank, trustee of the estate of her deceased father, Z. T. White, and against some eighteen other persons considered parties in interest, to set aside an agreement fixing her interest in her father's estate in trust, on the ground of fraud. Other relief prayed for is subordinate and immaterial unless the agreement be cancelled. There was judgment for defendants. The case presents purely a question of fact but the record is so voluminous that it is impracticable to review all the evidence. However, the following facts are not disputed.

Z. T. White and his first wife, Maggie Mathias, established their matrimonial domicile in Texas in 1882. She died in 1890, intestate. Appellant, then about two years old, was her sole heir and inherited an undivided one-half of the community estate but was not put in possession and her father continued to administer the property and acted as her guardian without probate authority. He subsequently married his second wife, Maude Bounds, and there were two daughters, issue of this marriage, Mary and Katherine. On January 20, 1923, Z. T. White deeded real estate valued at $60,000 to each of his three daughters. He continued to administer the property deeded to appellant, subdivided it and sold it in parcels from time to time. He executed notes in the sum of $55,000 to appellant, in payment for the money he collected, but did not deliver them. For many years he paid appellant $250 a month, which he charged against the interest on the notes. In 1931 Z. T. White and his wife, Maude, executed a deed of trust to the El Paso National Bank, conveying all his property in trust, except their homestead and residence in El Paso. He was solvent at that time, his entire estate being appraised at over $2,200,000, with total liabilities of about $672,000, but he was unable to pay his debts as they matured, which is not surprising, considering the national depression then existing. The trust deed provided for management of the estate by the bank, payment of the debts, payment of $1,000 a month to White and his wife and payment of $250 per month to appellant. Z. T. White died in 1932, leaving a last will and testament, wherein he provided, after the payment of his just debts, a legacy of $25,000 for each of his three daughters with the remainder of his estate to his wife, Maude. After the death of Z. T. White the El Paso National Bank as trustee continued to pay $250 a month to appellant for a short time and then for lack of funds the payments ceased. The daughters of his second marriage, Mary and Katherine, agreed to the trust.

About February 3, 1934, appellant, assisted by her then husband, Rodolfi, entered into an agreement with the El Paso National Bank, trustee, Maude B. White, administratrix of her husband's estate, and Katharine and Mary White, her half-sisters, assisted by their respective husbands, Harvey and Boykin. In substance, by this agreement appellant released all her claims against the trustee and the trust estate and against her stepmother and half sisters and against all assets in the possession or under the control of any of them. In return she was recognized as entitled to her legacy of

$25,000, received a note for $4500, which the El Paso National Bank purchased from her for $4500, and received in addition six notes of the El Paso National Bank, trustee, aggregating $57,200, payable on or before two years after date with six per cent. interest but postponed to the payment of all other indebtedness of the trust estate except that due to her stepmother and half-sisters. Two of these notes aggregating $13,925, were made payable to her three attorneys, Isaacs, Lattner and Harrington, who had represented her in the transaction for their fees. This is the agreement that is sought to be cancelled.

There is much other evidence in the record, introduced by appellant in an attempt to support her allegations of fraud. She also testified that she was ignorant of her rights and thought that as a result of the settlement she would be entitled to receive the sum of $250 per month, for the balance of her life in addition to the notes and her legacy of $25,000. We will not review the evidence on the question of fraud. It is sufficient to say that the district court found the allegations of fraud were not sustained and we concur in that finding. The district court also found that appellant had the assistance of competent counsel before entering into the agreement and was thoroughly advised that she would receive nothing further from the trust estate if she accepted it. The proof in support of this finding is conclusive.

It is evident that appellant was not deceived or unfairly dealt with in the settlement of her rights and the agreement is supported by adequate consideration. The trial balance of the accounts of the trust of December 7th, 1933, shows total assets of $1,459,278.78, with unpaid liabilities of $334,305.77, leaving net assets of $1,124,973.01. It is probable that with the orderly liquidation of the trust she will receive her legacy in full and the notes given her will be worth their face value with accrued interest.

There is no substantial evidence to show the value of appellant's mother's estate. Her father in his last will stated that when he came to Texas, which was before his first marriage, he was worth $15,000, and that when his first wife died the total estate was worth $25,000. If it be assumed these figures are correct, appellant's interest in her mother's estate would not exceed $5,000. And it is doubtful that appellant could have established her debt against the estate on the notes for $55,000.

The record presents no reversible error. The judgment is

Affirmed.